Gen. 17]                                                                    17

**CHARTER HOME RULE COUNTIES**


PUBLIC OFFICERS AND EMPLOYEES — CONSTITUTIONAL LAW —
   RECALL PROVISION IN COUNTY CHARTER WOULD BE
   UNCONSTITUTIONAL


October 18, 1995


*The Honorable Marvin H. Smith, Chairman*
*Caroline County Governmental Study Commission*


You have requested our opinion concerning the validity of a recall provision in a county charter. In our opinion, such a provision would be unconstitutional.


**I**


**Nature of Recall**

The County Commissioners of Caroline County have appointed a commission to study the county government. The commission, known as the Caroline County Governmental Study Commission, has been asked to consider whether it would be better for the county to adopt charter government under Article XI-A of the Constitution in lieu of the present code county government under Article XI-F. Among the arguments advanced by the proponents of charter government is that the charter could provide for the recall of the county's elected officials.

Recall generally refers to the termination of an elected official's tenure before the end of the term as the result of a special election called by a certain percentage of voters. *Poprosky v. Shea*, 573 A.2d 756, 758 (Conn. App. 1990); *Collins v. Morris*, 438 S.E.2d

896, 897 (Ga. 1994); *Wallace v. Tripp*, 101 N.W.2d 312, 314 (Mich. 1960).[1] In advocating a recall provision in a county charter, the proponents are evidently referring to the recall of the elected officials whose positions would be established by a charter – that is, the council and the executive, if the executive is elected. *See* Article XI-A, §3.

## II

### Constitutional Conflict

In interpreting the Charter County Home Rule Article, Article XI-A, the Court of Appeals has said that a county charter is the equivalent of a constitution, concerned with the distribution of power among the agencies of government and between the government and people. *Board of Supervisors of Elections v. Smallwood*, 327 Md. 220, 236-37, 608 A.2d 1222 (1992). The power to adopt a charter is derived directly from the Constitution and does not require implementing legislation. *Ritchmount Partnership v. Board of Supervisors of Elections*, 283 Md. 48, 58, 388 A.2d 523 (1978).

A recall provision can reasonably be regarded as proper charter material, not requiring statutory authorization.[2] Nevertheless, all charter provisions are subject to the federal and State constitutions and public general laws of the State. *See* Maryland Constitution, Article XI-A, §1; *Ritchmount*, 283 Md. at 59. As you suggested in

---

[1] Recall is to be distinguished from removal for cause as the result of legal proceedings. *See, e.g.,* Article XV, §2 of the Constitution.

[2] Of the related voter participation devices of legislative initiative and referendum, the Court of Appeals has held that, on the one hand, the initiative violates the Charter County Home Rule Article, Article XI-A, §3. *Maryland State Administrative Board of Election Laws v. Talbot County*, 316 Md. 332, 349, 558 A.2d 724 (1988). On the other hand, the Court held that the referendum is proper charter material. *Ritchmount Partnership*, 283 Md. at 64. The distinction is that the initiative completely deprives the county council of its legislative power in violation of Article XI-A, §3, while the referendum does not. *Talbot County*, 316 Md. at 347-49.

your letter, there is a substantial question of whether a recall provision would be contrary to the Fewer Elections Amendment of the State Constitution.

In relevant part, the Fewer Elections Amendment (or Quadrennial Elections Amendment, as it is sometimes called) provides that elections for State and county officials shall be held every four years. Article XVII, §2. Except for judges, all elected State and county officials "shall hold office for terms of four years, and until their successors shall qualify." Article XVII, §3.

The evident purpose underlying the mandatory term "shall hold" is to promote stability in government through fixed terms. Of course, the general rule of a four-year term is subject to qualification in the case of removal for cause as the result of legal proceedings. *See* Article XV, §2. A term can also be shortened due to the adoption of charter home rule under Article XI-A. *County Commissioners v. Supervisors of Elections*, 192 Md. 196, 213, 63 A.2d 735 (1949). However, the recall concept – allowing a popular vote to terminate an elected official's tenure prior to the end of the four-year term – is flatly inconsistent with the general principle that once officials have been elected, they are to serve a fixed term of four years.[3]

As the Georgia Supreme Court put it, "Recall is a procedure whereby it is the voters themselves who make the ultimate determination as to whether an official should retain his office for the duration of the term to which he was elected." *Collins v. Morris*, 438 S.E.2d at 897. In Maryland, however, that "ultimate determination" is made by Article XVII, §3 of the Constitution, not the voters.

---

[3] Article XVII, §3 does not apply to municipalities. We express no opinion about the constitutionality of recall provisions in a municipal charter. *See generally Town of Glenarden v. Bromery*, 257 Md. 19, 262 A.2d 60 (1970) (issue raised but not decided).

# III

## Conclusion

In summary, it is our opinion that adoption of a recall provision in a county charter would violate the Fewer Elections Amendment of the Maryland Constitution.

J. Joseph Curran, Jr.
*Attorney General*

Richard E. Israel
*Assistant Attorney General*

Jack Schwartz
*Chief Counsel*
*Opinions & Advice*